FILED UNDER SEAL

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NUMBER:

----------------------------------------x
UNITED STATES OF AMERICA, *ex rel.*
ABE HERTZ and STATE OF FLORIDA
*ex rel.* ABE HERTZ

                Plaintiffs,

v.

DELRAY COMMUNITY HOSPITAL,
TENET HEALTHCARE CORP.
and TENET HEALTHCARE-FLORIDA, INC.

                Defendants.
----------------------------------------x

**96-8330
CIV.-HURLEY**
MAGISTRATE JUDGE
LYNCH

COMPLAINT AND JURY DEMAND

FILED IN CAMERA AND
UNDER SEAL

Plaintiff/relator, Abe Hertz, in the name of the United States of America and the State of Florida, by his attorneys, Getnick & Getnick, as and for his complaint, alleges as follows:

1. As more fully alleged herein, this action arises out of a scheme to defraud the United States of America and the State of Florida perpetrated by the Defendants between at least 1991 and 1994, and possibly continuing to the present. Defendant Delray Community Hospital ("Delray"), which is owned and operated by Defendant Tenet Healthcare Corp. and its subsidiary Defendant Tenet Healthcare-Florida, Inc., made false claims to and received payment from Medicare, Medicaid and other government health programs for surgical pathology

Getnick & Getnick, Counsellors at Law, 805 Third Avenue, Suite 2300, New York, N.Y. 10022

2

procedures that were not performed and that approximately quadrupled its legitimate billing for surgical pathology procedures.

2. These acts constitute violations of the Federal False Claims Act, 31 U.S.C. §3729 *et. seq.* and the Florida False Claims Act, Fla. Stat. Ann. § 68.081-092 (Supp. 1995)("FCAs"). The FCAs provide that any person who knowingly presents a false or fraudulent claim to the Federal or State Governments (hereinafter referred to collectively as "the Government") for payment or approval is liable for a civil penalty of up to $10,000 for each claim, plus three times the amount of the damages sustained by the Government. The FCAs allow any person discovering a fraud perpetrated against the Government to bring an action for him or herself and for the Government and to share in any recovery. The complaint in an FCA action is filed under seal for an initial period of time without service on the defendants to enable the Government (1) to conduct its own investigation without the defendants' knowledge and (2) to determine whether to join in the action.

3. Plaintiff/relator has prepared a written disclosure statement, setting forth substantially all material evidence and information he possesses, for service on the Government with a copy of this complaint pursuant to 31 U.S.C. § 3730 (b)(2) and Fla. Stat. Ann. § 68.084 (3). Plaintiff/relator's written

3

disclosure statement evidences and supports the existence of the false and fraudulent claims alleged herein.

4. Plaintiff/relator Abe Hertz ("Hertz") is a retired plumbing supervisor who identified the false and fraudulent practices alleged in this action by reviewing bills and records relating to his own medical treatment. Hertz reported the practices to Medicare in 1992 and again in 1993. Hertz later discovered, by reviewing the medical bills and records of his wife, Shirley Hertz, and his neighbor, Mr. Elias Goldberg, that Delray had engaged in the same billing practices in connection with medical treatment Mrs. Hertz and Mr. Goldberg had received in 1992 and 1991 respectively.

5. Hertz, an original source within the meaning of 31 U.S.C. § 3730 (e) (4), seeks to recover damages and civil penalties in the name of the United States of America and the State of Florida arising from the false and fraudulent claims made by the Defendants in violation of the FCAs. Each time Defendant Delray performed a surgical pathology procedure under CPT codes 88300 through 88309 (covering the accession, examination and reporting of tissue samples), it billed Medicare, Medicaid and other government health programs approximately four times the legitimate charge for the procedure by making three microscopic slides of the tissue sample taken from the patient for pathological examination, and billing each one as a

separate and additional test. Thus, for example, each time Delray performed a procedure that should have been billed at $62.00, Delray claimed reimbursement from Medicare of $248.00. The damages and civil penalties that may be assessed against Defendants arising from these facts as alleged in this complaint are substantial.

## JURISDICTION AND VENUE

6. This is a civil action arising under the laws of the United States and of the State of California to redress violations of the federal and Florida False Claims Acts. This court has jurisdiction over this action brought under 31 U.S.C. § 3730 ("the Federal claims") pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732(a). This court has jurisdiction over the Defendants' violations of the Florida FCA pursuant to 31 U.S.C. § 3732(b), since these violations arise from the same transactions or occurrences as the Federal claims.

7. Personal jurisdiction and venue are proper in this district since the Defendants are found and/or transact business in this judicial district, and since the acts alleged herein in violation of the FCAs occurred in this judicial district.

5

## THE PARTIES AND PROGRAMS

8. Plaintiff/relator Hertz, a retired plumbing supervisor, is a citizen of the United States and a resident of the State of Florida. Hertz has knowledge of the false and fraudulent claims made by the Defendants to the Government and is an original source within the meaning of 31 U.S.C. § 3730(e)(4).

9. Defendant Delray is an acute care hospital located at 5352 Linton Boulevarde, Delray Beach, Florida 33484. Delray is owned and operated by Tenet Healthcare Corp. and its Florida subsidiary Tenet Healthcare-Florida, Inc.

10. Defendant Tenet Healthcare Corp. ("Tenet") is a publicly-traded corporation and the nation's second largest investor-owned hospital chain with approximately 69,000 employees nationwide and 75 hospitals in 13 States. Tenet has its principal place of business at 2700 Colorado Avenue, Santa Monica, California 90404. In addition to hospitals, Tenet also owns and operates medical equipment companies, retail pharmacies, medical supply stores, medical office buildings and home health care agencies. Prior to March 1995, Tenet was known as National Medical Enterprises, Inc.

11. Defendant Tenet Healthcare-Florida, Inc. of 1200 South Pine

6

Island Road, Plantation, Florida 33324 is a wholly owned subsidiary of Defendant Tenet Healthcare Corp.

12. Medicare is a fully Federally funded health insurance program for the elderly and disabled. Medicare Part A, the Basic Plan of Hospital Insurance, covers the cost of hospital services and related care. Medicare Part B, the Voluntary Supplemental Insurance Plan, covers the cost of physicians' services and certain other medical services not covered by Part A, including hospital outpatient services. Medicare is generally administered by private insurers under contract to the Federal Government. Private insurers administering Medicare Part A are known as "intermediaries," and are designated to serve a class of providers on a national or regional basis and perform such administrative functions as coverage determinations under Part A and Part B, payment of claims, and provider audits. Under Part B, private insurers ("carriers") handle payment for physicians' services and perform related administrative functions in specific geographic areas.

13. Medicaid is a State health insurance program primarily for indigent persons, funded by a combination of Federal and State funds. Under Federal Medicaid law and regulations, State Medicaid programs must cover outpatient hospital services. Soc. Sec. Act §§ 1902(a)(10) and 1905(a)(2)(A). In Florida,

7

outpatient hospital laboratory and pathology services are reimbursed the lowest of (a) the hospital's charges; or (b) the Medicaid fee schedule technical components rate used for independent laboratory services. <u>CCH Medicare and Medicaid Guide</u>, ¶ 15,572.

<u>ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION</u>

*Introduction To Allegations*
*Reimbursement for Surgical Pathology*

14. Claims by providers for surgical pathology procedures under Medicare Part B must accurately identify the service provided by a unique code, known as a CPT ("Current Procedure Terminology") code, that accurately describes the procedure and corresponds to a Medicare reimbursement rate. The CPT codes for surgical pathology are 88300 through 89399. CPT codes 88300 through 88309 are the codes for gross and/or microscopic examination of tissue samples take from patients for testing, and cover accession, examination and reporting. The CPT Codebook (a publication of the American Medical Association) defines the unit of service for codes 88300 through 88309 as the specimen. A specimen is defined therein as "tissue or tissues that is or are submitted [to a physician] for individual and separate attention, requiring individual examination and pathological diagnosis. Two or

8

more specimens from the same patient ... are each appropriately assigned an individual code reflective of its proper level of service." CPT 88300 is used for any specimen that in the opinion of the examining pathologist can be accurately diagnosed without microscopic examination. 88302 through 88309 are used for specimens requiring gross and microscopic examination, and represent additional ascending levels of physician work, defined according to the particular specimen that is taken.

15. Therefore, under CPT codes 88300 through 88309, a provider of surgical pathology services is reimbursed once, under a single code, for each specimen that he or she takes, examines and reports on.

### The Defendants' Fraud

16. On or about May 12, 1992, Hertz was admitted to Delray for a colonoscopy as an outpatient. Tissue samples were taken from him for pathological examination at that time.

17. Delray claimed reimbursement from Medicare and Medicaid and was paid for, *inter alia*, twenty-four surgical pathology services with respect to this medical treatment, billed as follows:

9

```
88304        SPATH DIAG,SMALL      x 6   total $558.00
88300        SMALL SPCMN (BLK)     x 9   total $396.00
88300        SMALL SPCMN (BLK)     x 9   total $396.00
```

18. When Hertz reviewed Delray's invoice showing these charges, he observed that the number of pathology procedures purportedly performed was excessive. In fact, only six tissue samples had been taken for pathological examination, and not twenty-four as stated on Delray's invoice. Hertz made a verbal complaint to Delray's billing office and requested that Delray conduct an audit and issue an itemized corrected statement.

19. Delray declined to acknowledge that the pathology charges were excessive and, to Hertz's knowledge, did not conduct an audit.

20. On or about August 10, 1992, Hertz made a sworn written complaint to the Department of Health and Human Services which stated *inter alia* that only six pathology procedures had been performed.

21. The responsible Medicare intermediary, Aetna Life Insurance Company ("Aetna"), investigated Hertz's allegations as a result of his complaint. On or about December 1, 1992, Aetna advised Hertz that the entire amount of $792.00 (2 x $396.00, representing two lots of nine tests billed under CPT 88300 as SMALL SPCMN (BLK)) was a duplicate charge and that the

10

reimbursement would be retracted. Aetna later sent Hertz a corrected statement showing the retraction.

22. On or about July 28, 1993, Hertz was admitted to Delray as an outpatient for a second colonoscopy. Tissue samples were taken from him for pathological examination at that time.

23. Delray claimed reimbursement from Medicare and Medicaid and was paid for, *inter alia*, twenty surgical pathology services with respect to this medical treatment, billed as follows:

    88304    SPATH DIAG, SMALL    x 5  total 570.00
    88307    SMALL SPCMN(BLK)    x 15 total 930.00

24. When Hertz reviewed Delray's invoice showing these charges, Hertz concluded that Delray had repeated its 1992 practice. In fact, only five surgical pathology procedures had been performed. Again, Hertz made a verbal complaint to Delray's billing office, and requested that Delray conduct an audit and issue an itemized corrected statement.

25. Hertz also contacted Aetna directly by telephone to advise that Delray had again billed Medicare for twenty pathology procedures although only five had been performed.

26. Delray conducted the audit requested by Hertz and on or about

11

September 21, 1993, advised him in writing its conclusion that the charges were correct because three microscopic slides had been prepared for each of the five tissue samples taken, making a total of fifteen.

27. Aetna again conducted an investigation of Hertz's allegations. On or about November 3, 1994, Aetna advised Hertz that since only five specimens were submitted for pathological examination, only five should have been billed, and therefore payment for the added fifteen pathology charges would be disallowed because the tests were not performed. Aetna later sent Hertz a corrected statement showing the removal of the charges.

28. More recently, Mr. Hertz discovered, by reviewing the medical bills and records of his wife, Shirley Hertz, and his neighbor Elias Goldberg, that Delray had engaged in the same billing practices in connection with medical treatment Mrs. Hertz and Mr. Goldberg had received at the hospital in 1992 and 1991 respectively, as more specifically described in the following paragraphs.

29. On or about April 1, 1992, Shirley Hertz was admitted to Delray for a colonoscopy as an outpatient. Tissue samples were taken from her for pathological examination at that time.

12

30. Delray claimed reimbursement from Medicare and Medicaid and was paid for, *inter alia*, four surgical pathology services with respect to this medical treatment, billed as follows:

|       |                   |     |          |
|-------|-------------------|-----|----------|
| 88300 | SMALL SPCMN (BLK) | x 3 | $132.00  |
| 88304 | SPATH DIAG,SMALL  | x 1 | $93.00   |

31. In fact, only one surgical pathology procedure had been performed, and not four as Delray claimed.

32. On or about December 5, 1991, Elias Goldberg was admitted to Delray for a colonoscopy as an outpatient. Tissue samples were taken from him for pathological examination at that time.

33. Delray claimed reimbursement from Medicare and Medicaid paid for, *inter alia*, four surgical pathology services with respect to this medical treatment, billed as follows:

|       |                   |     |          |
|-------|-------------------|-----|----------|
| 88300 | SMALL SPCMN (BLK) | x 3 | $126.00  |
| 88304 | SPATH DIAG,SMALL  | x 1 | $89.00   |

34. On information and belief based on paragraphs 16 through 33 hereof, only one surgical pathology procedure was in fact performed.

35. On information and belief based on paragraphs 16 through 33

13

hereof, between at least 1991 and 1994 and possibly continuing to the date hereof, Defendants engaged in a systematic fraud against the Government by submitting false claims to, and obtaining payment from, Medicare, Medicaid and other government health programs for surgical pathology procedures that were not performed. The fraud consisted of billing approximately four times the legitimate charge for each surgical pathology procedure performed under CPT codes 88300 through 88309 by making three microscopic slides of each tissue sample taken from the patient for pathological examination and billing each slide as a separate and additional test. Defendants filed the false claims alleged herein with actual knowledge that they were false, or with reckless disregard thereto or deliberate ignorance thereof.

36. While the details of each and every false and fraudulent claim made to the Government as a result of this systematic and long term fraud are more particularly within the Defendants' knowledge, Plaintiff/relator estimates, based on the civil penalty of $10,000 for each violation of the FCAs, and treble damages applied to the actual damages, that the total liability of the Defendants to the Government arising from the knowing presentation of claims for surgical pathology procedures that were not performed is substantial.

14

## FIRST CAUSE OF ACTION
(Federal False Claims Act
18 U.S.C. § 3729 (a) (1))

37. Plaintiff/relator repeats and realleges each and every allegation contained in paragraphs 1 through 36 above as though fully set forth herein.

38. This is a claim for penalties and treble damages under the Federal False Claims Act.

39. By virtue of the acts described above, Defendants, for the purpose of defrauding the Federal Government, knowingly presented and caused to be presented false and fraudulent claims for payment or approval under the Medicare, Medicaid and other Federally funded programs to officers, employees or agents of the United States Government within the meaning of 18 U.S.C. § 3729 (a) (1).

40. As a result, Federal monies were lost through payments made in respect of the claims and other costs were sustained by the Federal Government.

41. Therefore, the Federal Government has been damaged in an amount to be proven at trial.

42. Additionally, the Federal Government is entitled to the

15

maximum penalty of $10,000 for each and every false and fraudulent claim presented and caused to be presented by Defendants and arising from their fraudulent conduct as described herein.

SECOND CAUSE OF ACTION
(Florida False Claims Act
Fla. Stat. Ann. § 68.082 (2)(a))

43. Plaintiff/relator repeats and realleges each and every allegation contained in paragraphs 1 through 36 above as though fully set forth herein.

44. This is a claim for penalties and treble damages under the Florida False Claims Act.

45. By virtue of the acts described above, Defendants, for the purpose of defrauding the Florida State Government, knowingly presented and caused to be presented false and fraudulent claims for payment or approval under Medicaid and other Florida State funded programs to officers or employees of an agency within the meaning of Fla. Stat. Ann. § 68.082 (1)(a).

46. As a result, Florida State monies were lost through payments made in respect of the claims and other costs were sustained by the Florida State Government.

16

47. Therefore, the Florida State Government has been damaged in an amount to be proven at trial.

48. Additionally, the Florida State Government is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim presented and caused to be presented by Defendants and arising from their fraudulent conduct as described herein.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in an amount equal to threefold the damages to be proven at trial against Defendants, plus a civil penalty of $10,000 for each violation of 31 U.S.C. § 3729 and Fla. Stat. Ann. § 68.082 (2) (a) proven at trial;

2. An award to Abe Hertz of the maximum amount allowed pursuant to 31 U.S.C. § 3730 (d) and Fla. Stat. Ann. § 68.085, plus reasonable expenses which the Court finds to have been necessarily incurred in this action and reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730 (d);

3. Such other, further and different relief, whether preliminary or permanent, legal or equitable, as the Court deems just and

Getnick & Getnick, Counsellors at Law, 805 Third Avenue, Suite 2300, New York, N.Y. 10022

17

proper.


## DEMAND FOR JURY TRIAL

Plaintiffs demand that their claims for relief against the Defendants be tried by a jury to the full extent permitted by law.

|  |  |
|---|---|
| Dated: May 3, 1996 | GETNICK & GETNICK<br>By: _____<br>Neil V. Getnick (9864)<br>GETNICK & GETNICK<br>805 Third Avenue, 23rd floor<br>New York, New York  10022<br>Telephone: (212) 376-5666 |
| Dated: May 13, 1996 | By: _____<br>Lesley Ann Skillen (5156)<br>GETNICK & GETNICK<br>805 Third Avenue, 23rd floor<br>New York, New York  10022<br>Telephone: (212) 376-5666 |
|  | LOCAL COUNSEL |
| Dated: _____, 1996 | By: _____<br>Joseph L. Raia<br>Florida Bar # 322083<br>HOLTZMAN, KRINZMAN, EQUELS & FURIA<br>2601 South Bayshore Drive<br>Suite 600<br>Miami, Florida 33133<br>Telephone: (305) 859-7700 |
|  | OF COUNSEL |
| Dated: May 14, 1996 | _____<br>Freda Silbowitz<br>1985 South Ocean Drive #16J<br>Hallendale, Florida 33009<br>Telephone: (305) 457-9494 |

Attorneys for *qui tam* Plaintiff, Abe Hertz

Getnick & Getnick, Counsellors at Law, 805 Third Avenue, Suite 2300, New York, N.Y. 10022